## L. G. Frisbie, Plaintiff in Error, v. T. D. Randall et al., Defendants in Error.

### Gen. No. 16,277.

1. APPEALS AND ERRORS—*when finding by court not disturbed.* A finding by the court will not be disturbed as against the evidence unless clearly and manifestly so.

2. MUNICIPAL COURT—*what proceedings not subject to review.* Questions of practice arising in the municipal court will not be reviewed by the appellate court except ''to prevent a failure of justice.''

Error to the Municipal Court of Chicago; the HON. MANCHA BRUGGEMEYER, Judge, presiding. Heard in this court at the March term, 1910. Affirmed. Opinion filed May 20, 1912.

FREDERICK S. BAKER, for plaintiff in error.

HENRY B. SPURLOCK, for defendants in error.

MR. PRESIDING JUSTICE BROWN delivered the opinion of the court.

In this writ of error, which involves the sum of $33.37 between the parties, the Municipal Court made a part of the record its decisions on certain questions of law and fact. It held that L. G. Frisbie (who was a potato grower and dealer in Kansas) acted as a broker for T. D. Randall & Co. (who were commission merchants in Chicago) in the purchase of two cars of potatoes. As this is the contention of the plaintiff in error also, we shall, although it seems to be in a sense controverted by the defendants in error, assume, that it was proven. But the Court held that nevertheless Frisbie "was liable for the amount of dirt in said cars and the freight thereon."

This holding meant that from the amount for which Frisbie drew sight drafts, with bills of lading of these cars attached, on Randall & Co., which drafts Randall & Co. paid, there should have been deducted a certain amount for dirt which was improperly and unjustifiably shipped with the potatoes, and the weight of which, therefore, was included in the computation of the sight drafts at the price of potatoes and charged for also in the freight bill.

The amounts of the drafts were the price paid by Frisbie to the persons from whom he had bought the potatoes, with five dollars a car added. The drafts had to be paid by Randall & Co. before they could get the bills of lading and the potatoes however, and in this suit they claimed to be entitled to recover back the amount at which the weight of dirt was figured at the price of potatoes. They claimed $74.67 and the Court held that they were entitled, under competent evidence, to $33.37. We are not inclined to disturb these findings

on the merits. Although Frisbie bought as a broker, the order was addressed to Frisbie, directing him to ship best DeSoto, Ohio, potatoes, and they were shipped and the invoice made in Frisbie's name and the sight drafts drawn by him with bills of lading attached. The Court seems to have held that even though they were bought by Frisbie as an agent or broker, he was under the evidence liable for the unusual and injurious quantity of dirt and culls made a part of the shipment, and we are not prepared to say the Court was wrong.

The method adopted to secure this reclamation, however, is also strenuously objected to by the plaintiffs in error. It was certainly highly irregular in its inception.

There had been two other cars of Frisbie's own potatoes shipped by Frisbie to Randall & Co. to sell on commission. Randall & Co. had sold them and held $258.22 on account of the proceeds. They sent an account to Frisbie, crediting him with that amount and in addition with $304.33 only on the two cars bought by him as a broker for them, and debiting him with the amount of the sight drafts they had paid on account of these two cars, aggregating $369.35. The net result was that they showed themselves indebted to Frisbie in the account in the sum of $183.55 only, instead of $258.22. For this amount of $183.55 they sent Frisbie a check. Frisbie refused to accept this as a settlement and sued for the difference of $74.67.

When this case came up for trial before the Municipal Court, without a jury, on October 15, 1908, the record says, "the defendants offered to file a plea of set off. On objection the Court ruled the offer came too late and plea of set off stricken from the files."

After evidence produced on both sides the case was continued until October 25, 1909, for defendant to produce authorities and for argument. On October 22, 1909, Randall & Co. began a suit in attachment against

Frisbie as a non-resident. T. D. Randall made an affidavit for attachment that Frisbie was indebted to Randall & Company "in the sum of at least $74.67 upon overdrafts paid by said T. D. Randall & Co. to said L. G. Frisbie on and for two carloads of potatoes (cars number 54102 and 56210) shipped by defendant to plaintiffs, and damages respecting same sustained by plaintiffs by reason of defendant's failure to ship them goods of the kind and quality ordered and paid for by the plaintiffs and the quantity shown in defendant's invoice."

Randall & Co. procured a writ of attachment on this affidavit, and in the writ had themselves named as garnishees, and it was served on them as garnishees.

Then on October 25, 1909, when the case of Frisbie vs. Randall et al. was called again for trial, Randall & Co. filed a plea of *puis darrein continuance,* setting up these attachment proceedings. Frisbie moved to strike the plea from the files. The decision was reserved and the cause continued until October 28, 1909. On October 27th Randall & Co. answered as garnishees in their attachment suit, that they "had in their possession or under their control the sum of $74.67, which the said Frisbie * * * claimed to be due him from the garnishees." On October 28th the suit of Frisbie vs. Randall et al. was again continued. It came up finally after another continuance and the suggestion of the death of one of the partners of Randall & Co. and an order that it proceed against the survivors, on November 10, 1909, when Frisbie renewed the motion to strike the plea *puis darrein,* etc., from the files.

In the attachment suit, however, on November 9th he filed pleas denying any liability to Randall & Company, and setting up also the pendency of the assumpsit suit of Frisbie vs. Randall et al., and declaring that the parties plaintiff and defendant should in one and the same action submit to the Court for final determination all matters in dispute between them which were prop-

erly cognizable by the Court. Thereupon, one part of the record, (the Statement of Facts) says: "It appearing to the Court that the subject matter of both the assumpsit and attachment suits was one and the same matter, and that an early adjustment should be had of both cases, upon the suggestion of the Court both counsel proceeded before Hon. Harry Olson, Chief Justice of the Municipal Court, explained the subject matter of the respective controversies and asked that the two cases be consolidated for immediate hearing, and that the same be assigned to Judge Mancha Bruggemeyer for immediate trial. Order entered. Cause proceeds."

Other parts of the record show an order entered in each case on October 28, 1909, however, consolidating each with the other. That in Frisbie vs. Randall & Co. recites that it was made "on the motion of the plaintiff;" that in Randall & Co. v. Frisbie, that it was made "by agreement of the parties."

The record is confused, the pleadings inartificial and the proceedings highly irregular, but it is plain that the consolidation was effectually completed and that a general appearance was entered by Frisbie in the attachment suit of Randall & Co. vs. Frisbie, by his pleas called "Plea and Traverse," of November 9, 1909.

Under these circumstances and the provision of the Municipal Court Act that "no assignment of error in this Court shall be allowed which shall call in question the decision of such Municipal Court in respect to any matter pertaining to the practice in such Court," we do not think that Frisbie is in a position to question the decision of that Court on the respective claims of the parties on the ground of irregularity in the proceedings.

Of course, whether the matter complained of pertained to the merits or to practice, we could grant relief "to prevent a failure of justice," but we are not satisfied that any injustice has been done.

The judgment of the Municipal Court is affirmed.

*Affirmed.*